January 12th, 1939

Hon. Z. Gossatt, Banking Commissioner
Department of Banking
Austin, Texas

Dear Sir:

> Opinion No. 0-52
> Re: Article 350 & Article 352
> Is there any discretion permissible
> to the Banking Commissioner in mak-
> ing public the examiner's reports
> on financial institutions?

Your letter of January 6, 1939, in which you ask an opinion as to certain questions, has been referred to the writer for attention. Your questions are:

1. Does the rule of privilege pertaining to examiners' reports obtain with respect to institutions that are closed and not actively engaged in their corporate business at the time the report is called for or the privilege invoked?

2. Does the rule of privilege in any event apply to Loan & Brokerage Companies the same as to banking institutions?

3. Is there any discretion permissible to the Banking Commissioner in the matter of making public examiners' reports by giving copies thereof or permitting the inspection thereof and if so, just what are the limits of, or the rules governing, the exercise of that discretion?

Article 350 of the Revised Civil Statutes as amended by the 41st Legislature, First Called Session, Acts of 1929 provides for the appointment of the bank examiners. Article 353 of the Revised Civil Statutes prescribes his qualification while Article 352 of the Revised Civil Statutes provides for the bond and oath of an examiner, and among other things, provides that he shall take oath, that -

"He will not reveal the condition of any
bank or banking trust company, examined by him or
any information secured in the course of any ex-
amination of any bank or banking trust company,
to any one except the Commissioner."

Article 551 of the Penal Code provides for the pen-
alty to be inflicted upon a bank examiner for the violation
of the oath provided for in Article 352 of the Revised Civil
Statutes.

Chief Justice Cureton of the Supreme Court, when
as first assistant attorney general of this State, wrote an
exhaustive opinion under date of March 4, 1915, addressed to
the Honorable John S. Patterson on questions somewhat relat-
ed to those asked by you with respect to the above statutes
which have since been renumbered Judge Cureton said:

"We think the meaning of these two provisions
when considered together is, that a bank examiner
cannot voluntarily reveal the condition of any bank
examined by him or voluntarily give any one any in-
formation concerning the condition of any such bank,
if such information was secured officially. These
provisions, however, do not prohibit such Examiner
from giving his testimony in a judicial proceeding,
as the language of the provisions clearly seek only
to prohibit voluntary disclosures on the part of
the examiner and do not attempt to prohibit a court
from requiring the examiner to disclose such facts,
as the court may have a right to require to be dis-
closed. The question, therefore, finally reduces
itself to one of privilege communications. The same
rules would govern an examiner in this respect as
govern the Commissioner of Banking himself, as an
examiner is a public officer who represents the De-
partment of the Government which supervises and
controls the banks. Briefly, his business is to
make examination of State banks and to transmit to
the Commissioner of Insurance and Banking a report
of the condition of banks examined by him, and it
is upon the basis of those reports that the Commis-
sioner determines whether the bank shall continue

as a going institution or whether it shall close
its doors and cease to exist; likewise, as to
what requirements shall be made of the bank by
the Commissioner of Insurance and Banking. The
bank examiner is required to take an oath of of-
fice, give bond, possess certain qualifications
and his position has all the characteristics of
and is a public office."

In support of the above, Judge Cureton cited the
statutes hereinabove referred to by the writer, as well as
the following authorities:

Mitche on Banks, Vol. 3, p. 1786,
Witters vs. Sowers, 43 Fed. 763.

Article 3722 Revised Civil Statutes provides that
the Banking Commissioner, along with other named Government
officials, shall:

"* * * * * furnish any person applying for
the same, a copy of any paper, document or record
in their offices, and with certificate under seal
certifying to any bank contained in the papers,
documents or records of their offices; and the
same shall be received in evidence in all cases
in which the originals would be evidence."

This statute is not mandatory that Government of-
ficials produce and furnish copies of all instruments that
might by chance be in their hands. It cannot extend to nor
include such documents as might contain information prejudi-
cial to the public interest received by a Government official
in an official capacity. Whether or not such information or
document can be required of any official must be governed
by the general rules which govern privileged communications
to public officers. Judge Cureton, in the above referred to
opinion, states:

"It may be stated as a general principal
that public policy forbids the maintenance of any
suit in a Court of Justice, the trial of which
would inevitably lead to the disclosure of matters
which the law regards as confidential and in regard
of which it will not allow the confidence to be
violated."

The President of the United States, the Governors of several states and their Cabinet officers are not bound to produce papers or to disclose information committed to them in a judicial inquiry, when, in their own judgment the disclosure would, on public grounds, be inexpedient. This principal is recognized and supported in the following cases:

Trotten vs. United States, 92 U.S. 105
Hartranft's Appeal, 27 Am. Rep., 667
Thompson vs. German Valley R.R. Co., 22 N.J. Eq.111

This principal applies with equal force and effect to the heads of National and State Governments:

Worthington vs. Scribner, Am. Rep. 730
In re Huttman, 7 Fed. 699.
In re Weeks, 82 Fed. 729
Boske vs. Comingore, 177 U.S. 459.

The Supreme Court of Massachusetts in Hartranft's Appeal, supra, said:

"Thus the question of the expendiency of the production of the required evidence is referred, not to the judgment of the Court before which the action is trying, but of the officer who has that evidence in his possession."

After a careful examination of the authorities it is apparent that the Banking Commissioner can avail himself of the privilege of refusing to testify about, or to furnish copies of any examiners report in his possession, if he feels that such disclosure would be prejudicial to public interest. If, on the other hand, he should decide that to produce such information as he might possess would be to public interest, he can do so.

Article 1524a, Par. 2, R.C.S. as amended by Acts of 1937, 45th Legislature is as follows:

"The Banking Commissioner of Texas shall ex-
amine or cause to be examined such corporations

annually or oftener if he deems it necessary. Said

corporation shall pay the actual traveling expenses, hotel bills, and all other actual expense inci- dent to such examination and a fee not exceeding one-eighth of one per cent of its actual paid-in capital. If such corporation had not sold in Texas its bonds, notes, certificates, debentures or other obligations and does not offer for sale or sell in Texas its bonds, notes, certificates, debentures or other obligations, the Banking Com- missioner of Texas, in lieu of an examination, shall accept a financial statement made on such form, containing such information as he desires. The Banking Commissioner of Texas is hereby author- ized to appoint not to exceed one examiner for every fifty (50) of such corporations. Each ex- aminer shall take the oath and furnish a bond as required of State Bank Examiners, and shall re- ceive an annual salary as follows:" * * * *"

By virtue of such article the Banking Commissioner is given power to examine or cause to be examined all cor- porations embraced by the provisions of Article 1524a. It likewise, provides that each examiner shall take the oath and furnish a bond as required of state bank examiners. In tak- ing the same oath as taken by a bank examiner, the loan and brokerage company examiner would be no more privileged to make public any information concerning the condition of any company examined by him, if such information was received by him in the course of his official duty as such an examiner, than would a bank examiner be privileged to make public any information he might possess under similar circumstances and conditions. Judge Cureton concluded in the opinion herein- above referred to that a bank examiner has no authority to disclose any information received by him during the course of his examination of a bank, if such information was receiv- ed by him in the course of his official duty as such examiner, except and unless he be specifically directed by the Banking Commissioner to do so. No authorities are found that will justify any change in this conclusion.

It is apparent that the answers to the first and last questions propounded by you, must be based upon the sole proposition of whether or not your action in the premises is to the public interest.

It is, therefore, the opinion of this department that:

(1) The rule of privilege pertaining to examiners reports obtains with respect to institutions that are closed and not actively engaged in their corporate business at the time the report is called for or the privilege invoked.

(2) The rule of privilege pertaining to examiners report applies to loan and brokerage companies, the same as to banking institutions.

(3) The Banking Commissioner has discretion in the matter of making public examiners' reports by giving copies thereof or permitting the inspection thereof, or in testifying or permitting examiners to testify under his supervision and express permission, limited only by his decision and discretion of whether or not the making public of such information is to the public interest.

Trusting this fully and satisfactorily answers your inquiry, I am

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Lloyd Armstrong_

Assistant

LA:OMB

APPROVED:

_Gerald C. Mann_

ATTORNEY GENERAL OF TEXAS